## MUIR v. MALLORY.

Court of Appeals of District of Columbia.
Submitted March 15, 1927. Decided
May 2, 1927.

No. 1916.

Patents ⊙=91(4)—Party to Interference proceeding involving invention of cooling system for internal combustion engines held not entitled to priority because of outstanding patents.

Party to interference proceeding involving invention of cooling system for internal combustion engines *held* not entitled to award of priority on strength of prior patents reading on counts of interference.

Appeal from Commissioner of Patents.

Patent interference proceeding between Wellington W. Muir and Harry C. Mallory. From a decision of the Commissioner of Patents, awarding priority to the latter, the former appeals. Affirmed.

C. L. Sturtevant, of Washington, D. C., for appellant.

J. E. Hubbell, of New York City, for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from a decision of the Commissioner of Patents in an interference proceeding

awarding priority of invention to appellee Mallory, on an invention set forth in the following counts:

"1. In a cooling system for internal combustion engines, a jacket, a radiator normally acting as a condenser connected to the jacket, a reservoir connected to the radiator and placed at a lower level than the radiator, so the radiator will empty automatically into the reservoir when the engine stops, and means for lifting the cooling fluid from the reservoir when the engine is running.

"2. In a cooling system for internal combustion engines, a circuit comprising a jacket, a radiator normally acting as a condenser, a reservoir for cooling liquid at a low point in the system, a pump having a suction drawing cooling fluid from the radiator and from the reservoir and delivering it in the direction of the jacket."

"4. In a cooling system for internal combustion engines, a circuit for cooling fluid, comprising a jacket, a radiator normally acting as a condenser, means for maintaining an excess supply of cooling liquid which said means serves to drain the radiator, causing the condenser action of the latter when the engine is running, and serving to empty it of liquid when the engine is idle."

This interference is between a patent granted to appellant, Muir, July 13, 1920, on an application filed July 15, 1919, and the application of appellee, Mallory, filed April 15, 1919.

The interference was originally declared on four counts on which the Examiner of Interferences awarded priority to the party Mallory. On appeal, the Board of Examiners in Chief held all the counts unpatentable, and recommended to the Commissioner the dissolution of the interference without judgment of priority. On hearing, the Commissioner held count 3 unpatentable, and dissolved the interference as to that count, remanding the case to the board for determination of priority on the other counts. The board accordingly reversed the Examiner of Interferences, and awarded priority to the party Muir. The decision of the board was reversed by the Commissioner, from whose decision the present appeal was taken.

The invention in issue is described by the Commissioner in his opinion as follows: "The invention relates to a cooling system for automobile engines, in which the heat generated by the engine causes the cooling liquid to vaporize; the vapor being condensed in the automobile radiator. It is well known that in such devices there must be provision for adding water from time to time to the circulating system. A method commonly adopted and employed by both parties to this interference is to provide a reservoir which will hold an excess of water, so that there always will be more than sufficient water to fill the circulating system to the extent necessary for operation. That is old. The parties here point out that in such a system it is desirable to drain the radiator when the system is out of operation. They both do this, and that is old in the art. The parties here both point out that in their specific system the radiator is drained into the reservoir, which holds the supplemental or excess supply of water, and the substance of the present invention lies in providing such a reservoir for holding the excess supply of water at a point below the radiator, so that the radiator may drain into it."

The claims in issue were taken from a patent that had been issued to the party Muir, in which he is junior to the application of the party Mallory. It is contended, however, by Muir that the counts in issue apply to the structures of two earlier patents issued to him, and that he should be allowed the date of the applications for these patents, December 24, 1917, and June 14, 1918, which are prior to any date alleged by Mallory. It was upon this theory that the Board of Examiners in Chief awarded priority to Muir.

While the present claims, copied from an outstanding patent, must be given à broad interpretation, they must bear the test of reading clearly on the later Muir patent in order to, if possible, avoid the prior art. The Muir patent provides for a draining of the radiator into the reservoir when the engine is not running. As stated in count 4, it calls for "means for maintaining an excess supply of cooling liquid, which said means serves to drain the radiator." That is substantially the same element or means set forth in count 1, as "a reservoir connected to the radiator and placed at a lower level than the radiator, so that the radiator will empty automatically into the reservoir when the engine stops."

As clearly pointed out in the decisions of the tribunals below, these counts read upon the Mallory device, which discloses that the bottom portion of his radiator is so constructed as to meet the requirement of a tank into which the excess liquid will drain from the radiator. There is no particular requirement in the counts as to the location of the tank, other than that it must be below the radiator, and contain space large enough to receive an excess supply of water drained from the radiator.

The case turns, therefore, upon the ques-

tion of whether or not the counts read on the prior patents to Muir, on which he is forced to rely in order to establish priority. An examination of the former patents discloses that the provision for excess supply of water consists in a tank or reservoir situated above the radiator, and into which the radiator cannot possibly drain. Indeed, it is not suggested in the applications for those patents that there is capacity at the bottom of the radiator to receive any drainage or excess supply of liquid, and, as suggested by the Commissioner, "if there were such capacity in the bottom of the radiator, the additional tanks 5 (shown in the earlier Muir patents) would be unnecessary."

From a careful examination of the whole case, we are convinced that the decision of the Commissioner is correct, that Muir cannot attach his present application to the dates of the earlier patents, and that accordingly Mallory must prevail.

The decision of the Commissioner of Patents is affirmed.